IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| MIDLAND PROPERTIES II, LLC, | ) | CASE NO. BK16-80487 |
| | ) | |
| Debtor(s). | ) | CHAPTER 11 |

ORDER

Hearing was held on May 9, 2016, on the motion for sanctions (Fil. No. 24) and motion for disgorgement of fees (Fil. No. 26) filed by creditor First State Bank. David G. Hicks appeared for the debtor, Craig A. Knickrehm and Andrew R. Biehl appeared for First State Bank, Edward Brink appeared for Cass County Bank, Jeffrey Silver appeared for Charter West Bank, and Jerry Jensen appeared for the United States Trustee.

After obtaining dismissal of this bankruptcy case and a related predecessor Chapter 11 case in the face of overwhelming evidence that this case was filed in bad faith for the sole purpose of hindering secured creditor First State Bank from enforcing its security interest, First State Bank is pursuing sanctions and disgorgement against the debtor and its counsel. Evidence was admitted, post-hearing briefs were filed, and the matter is now ready for decision.

For the reasons stated below, the motions are granted.

I. Background

Jerry J. Morgan, Sr., served as the sole and managing member of Midland Properties, L.L.C., an entity which owned a number of rental properties in the Omaha area. Several banks held mortgages or other security interests in these properties. First State Bank was one of those creditors and was owed more than $1 million as of the petition date. Mr. Morgan and Midland Properties filed Chapter 11 petitions in 2013 and the cases were jointly administered. A plan was confirmed in March 2015 under which First State Bank's claims would be paid over a term of five years and unsecured creditors would receive quarterly distributions of $5,000.00 for five years. Midland Properties quickly defaulted on its plan payments to First State Bank, and after filing and withdrawing several motions for relief, First State Bank ultimately obtained relief from the automatic stay on October 27, 2015, to proceed with its state-law remedies. The debtors appealed that order but did not request a stay pending appeal. First State Bank proceeded with the foreclosures of its deeds of trust, with sales of eight of the properties scheduled for April 6, 2016, and two more scheduled for April 14, 2016. The bank filed quiet title actions regarding other properties, and obtained the appointment of receivers to collect rents.

After the automatic stay had been lifted and while First State Bank was moving forward to liquidate its security interests and foreclose its deeds of trust, Mr. Morgan deeded the properties from Midland Properties, L.L.C., to Midland Properties II, L.L.C. (hereafter "MPII"), which was formed

on February 8, 2016. The deeds were executed on January 2, 2016, and recorded on February 29, 2016. MPII then filed a Chapter 11 petition on April 4, 2016, just days before the bank's scheduled trustee sales. In the meantime, Mr. Morgan and his attorney proceeded with the Midland Properties appeal and an adversary proceeding against First State Bank in the normal course, as if the Midland Properties plan was still viable and ongoing. At the § 341 meeting in the MPII case on May 2, 2016, counsel for First State Bank first learned that the debtor had acquired all of its property from Midland Properties in exchange for a purported assumption of the secured debt. MPII did not assume Midland Properties' unsecured debt.

First State Bank quickly moved to dismiss the MPII bankruptcy petition for cause because the debtor's actions left the transferring entities with no assets and no way to pay unsecured creditors pursuant to the confirmed Chapter 11 plan of Midland Properties and because the filing was clearly in bad faith. The United States Trustee also moved for dismissal of Midland Properties' bankruptcy case, asserting that because of the transfer of all assets to MPII, Midland Properties had no reasonable likelihood of rehabilitation, had failed to make its plan payments and file necessary reports, and was being grossly mismanaged. First State Bank also filed these motions for sanctions and for disgorgement of legal fees, arguing that this bankruptcy petition was filed in bad faith to delay and frustrate the legitimate efforts of creditors to enforce their rights against the debtor. All four motions were heard on May 9, 2016, whereupon the court dismissed both bankruptcy cases for cause and took the sanctions and disgorgement motions under advisement.

In granting First State Bank's motion to dismiss the bankruptcy case for cause, the court found that

> the cause for dismissal are the grounds stated in 11 U.S.C. § 362(d)(4); that the petition was part of a scheme to delay, hinder, or defraud creditors, including First State Bank, involving both (a) the transfer of all or part ownership of, or other interest in, real property securing loans made by First State Bank without the consent of First State Bank or Court approval, and (b) that there have [been] multiple bankruptcy filings affecting such real property. Accordingly, pursuant to 11 U.S.C. § 362(d)(4) and 11 U.S.C.A. § 362, and the Court's authority under 11 U.S.C. § 105, the automatic stay is hereby annulled retroactively to the time of the filing of the Voluntary Petition herein, April 4, 2016. Furthermore, pursuant to § 362(d)(4), the automatic stay will not apply to the properties at issue here for a period of two years from the date hereof in the event Debtor or any other party subsequently files for relief under the United States Bankruptcy Code.

Order of May 10, 2016, at ¶ 2 (Fil. No. 50).

Meanwhile, the appeal by Mr. Morgan and Midland Properties remained pending before the Bankruptcy Appellate Panel, which did not learn until late April 2016 that all of the debtors' assets had been transferred to MPII and that MPII was now a debtor. The appellate court was advised in May 2016 that both bankruptcy cases had been dismissed and the appeal was moot. First State Bank

filed a motion for sanctions in the appeal, based on the debtors' pursuit of a moot appeal. The Bankruptcy Appellate Panel found that the appeal became moot on January 2, 2016, when the debtors executed quit-claim deeds transferring all the properties to MPII. Nevertheless, debtors' counsel briefed the appeal in February and March without notifying the appellate court or First State Bank of the transfers. The Bankruptcy Appellate Panel ruled that the appeal was frivolous as well as moot and sanctioned the debtors for First State Bank's costs and attorney fees incurred in pursuing the appeal after it became moot on January 2, 2016. Because debtors' counsel was not involved in the transfers but did not inform the bank's attorneys or the appellate court after he became aware of the transfers on March 8, 2016, the court sanctioned him for the bank's fees incurred after that date. By judgment entered on June 3, 2016, the Bankruptcy Appellate Panel imposed monetary sanctions of almost $25,000.00 against the debtors and their attorney for pursuing a frivolous and moot appeal.

## II. Motion for Sanctions

First State Bank's motion for sanctions was brought under Federal Rule of Bankruptcy Procedure 9011(b)[1] and (c)(1)(A)[2] and the court's general authority under 11 U.S.C. § 105(a). The

---

[1]That subsection provides:

(b) REPRESENTATIONS TO THE COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

[2]That subsection provides:

(c) SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law

(continued...)

court may impose sanctions under the auspices of Federal Rule of Bankruptcy Procedure 9011(c), which forbids frivolous, improper, or unsupported filings, as well as § 11 U.S.C. 105(a), which authorizes the court to take action to prevent an abuse of process. *Young v. Young (In re Young)*, 507 B.R. 286, 291-92 (B.A.P. 8th Cir. 2014).

Rule 9011 is the bankruptcy version of Federal Rule of Civil Procedure 11. It requires that every petition, pleading, written motion, and other paper be signed by an attorney. Fed. R. Bankr. P. 9011(a). The signature constitutes a certification that to the best of the attorney's knowledge, information, and belief, "formed after an inquiry reasonable under the circumstances," the petition, pleading, motion, or paper "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation" and that the legal contentions therein are warranted by law. Fed. R. Bankr. P. 9011(b)(1) and (2). *Nett v. Manty (In re Yehud-Monosson USA, Inc.)*, 472 B.R. 795, 805 (D. Minn. 2012).

> An award of sanctions involves a consideration of three types of issues: factual, legal, and discretionary. First, a court must consider factual questions regarding the nature of the attorney's inquiry prior to filing the pleading and the factual basis for the pleading. Next, a court must consider legal issues to determine if the pleading is warranted by existing law or a good faith argument for a change in the law and whether the attorney's conduct violated Rule 9011. Finally, if a court determines that sanctions are warranted, it must exercise discretion to ensure the sanction is appropriately tailored to the situation.

*Williams v. Living Hope Se., LLC (In re Living Hope Sw. Med. Servs., LLC)*, 525 B.R. 95, 100 (B.A.P. 8th Cir. 2015) (quoting *Crofford v. Conseco Fin. Servicing Corp. (In re Crofford)*, 301 B.R.

---

[2](...continued)
firms, or parties that have violated subdivision (b) or are responsible for the violation.
    (1) How Initiated.
        (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

880, 883-84 (B.A.P. 8th Cir. 2003) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990))).

The Court of Appeals for the Eighth Circuit recently explained the gravity of an attorney's duty to the bankruptcy court under Rule 9011:

> An attorney "must make a reasonable inquiry into whether there is a factual and legal basis for a claim before filing." *In re Phillips*, 433 F.3d at 1071. Rule 9011 is critical for the bankruptcy system to function because:
>
>> [t]he typical federal court disposes of hundreds of cases each year – a bankruptcy court disposes of thousands. It is not uncommon to see dozens of attorneys in a bankruptcy courtroom, presenting arguments and objections on a long list of cases, with rulings issuing at pace that makes a cattle auction appear leisurely. A bankruptcy court does not have the time district courts devote to a motion, to examine each petition, proof of claim, and objection; the bankruptcy judge must rely on counsel to act in good faith. The potential for mischief to be caused by an attorney who is willing to skirt ethical obligations and procedural rules is enormous.
>
> *In re Armstrong*, 487 B.R. 764, 774 (E.D. Tex. 2012).

*Young v. Young (In re Young)*, 789 F.3d 872, 879 (8th Cir. 2015) (footnote omitted).

Rule 9011 violations are determined by applying an objective standard of reasonableness under the circumstances. *In re Living Hope Sw. Med. Servs., LLC*, 525 B.R. at 99 (footnote omitted); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404-05 (1990).

    A.    <u>Against the Debtor</u>.

The debtor argues the transfers were made for a legitimate business reason – to attempt to protect assets – and were not done in bad faith. According to Mr. Morgan and the debtors' attorney, Midland Properties encountered significant obstacles to making its plan payments because some secured creditors (other than First State Bank) sold the debt and the assignees could not be contacted, others refused to accept the plan rate of interest, some did not know how to account for the plan payments, some failed to pay real estate taxes out of the escrowed funds, and others attempted to modify the terms of the loans. None of the offending lenders are identified nor was any evidence presented to support the allegations. In any event, counsel for the debtor identifies these obstacles as "unusual circumstances" warranting unusual solutions. Mr. Morgan and the debtors' attorney discussed various approaches to dealing with these issues – incredibly, none of which involved seeking the assistance of the bankruptcy court in enforcing the plan's terms, despite the plan's retention of jurisdiction specifically to "(h) issue injunctions, enter and implement other Orders, or

otherwise exercise the powers of the Bankruptcy Court to restrain interference by any entity or individual with the Debtor's implementation, consummation, or enforcement of the Plan, the Confirmation Order, or the reorganization effort[.]" First Amd. Plan of Reorganization, Article IX(h) at 31 (Fil. No. 179).[3]

Counsel for the debtors explained to the court his interactions with and advice to Mr. Morgan concerning efforts to save at least a portion of Mr. Morgan's real estate portfolio with possible solutions such as negotiating settlements with lenders, pursuing state law injunctive relief, filing counterclaims in the receivership litigation, and purchasing the properties at foreclosure sales through another company. According to counsel, Mr. Morgan raised the idea of transferring the assets to another entity and filing a bankruptcy case. Counsel says he demurred, suggesting preferable alternatives, but allowed that such an idea had worked in other cases, according to his research. Counsel identified from his research seven "red flags"[4] that an asset transfer would raise, discussed them with Mr. Morgan, and believed that Mr. Morgan adequately addressed those concerns as he structured the transfers. Specifically, counsel states, Mr. Morgan did so

> by providing mortgage assumption as consideration for the property transfer; creating a Nebraska limited liability company as an entity that was qualified to be in bankruptcy; he was not manipulating any tax liabilities; he established the entity long before "the eve" of filing bankruptcy; he recorded the deeds transferring assets to the new entity long before "the eve" of foreclosure, judgment execution, the appointment of a receiver and the like; he transferred title to all of the properties regardless of lender, thus avoiding singling out one creditor for this treatment; he had properly recorded notice of the deeds, the mortgage assumption documents, the assignments

---

[3] The Stipulated Order Confirming Plan contained additional language retaining jurisdiction: "The Court retains jurisdiction to hear plan and/or confirmation order disputes; allegation of plan default disputes; claims disputes and/or objections; substantial consummation and case closing disputes; and, the various retention of jurisdiction items set forth in Article IX and otherwise throughout the Plan." Fil. No. 371, at 4, ¶ 3.

[4] Those "red flags" as listed in the debtor's brief are:
    1. lack of consideration for the property transfer;
    2. creating an entity that was not qualified to be in bankruptcy;
    3. trying to manipulate tax liabilities;
    4. establishing the entity "on the eve" of its filing bankruptcy; transferring assets to the new entity "on the eve" of foreclosure, judgment execution, appointment of a receiver, and the like;
    5. singling out one creditor for this treatment;
    6. not recording proper notice of the transfers and/or title disputes; and
    7. not being able to proceed with a feasible bankruptcy once filed.

Br. in Supp. of Resistance to Mot. for Sanctions, at 4 (Fil. No. 54).

> of rent, and lis pendens, and, the rent collection assignment demonstrated being able
> to feasibly proceed with a bankruptcy once filed.

Br. in Supp. of Resistance to Mot. for Sanctions, at 5 (Fil. No. 54).

While the debtor's counsel is correct that filing bankruptcy on the eve of a foreclosure sale, in and of itself, is not considered bad faith and can be a viable use of the protections of the bankruptcy system, his arguments lose a certain amount of credibility in light of the circumstances of this debtor. If this were the debtor's first bite of the apple, so to speak, its actions might be viewed more generously. However, given the debtor's efforts to harass, hinder, and delay First State Bank in the previous bankruptcy case, its conduct here deserves to be viewed with skepticism. Mr. Morgan admitted at the § 341 hearing that First State Bank's properties were the initial transfers to MPII because the stay had been lifted and foreclosures were pending and Mr. Morgan believed this was a good way to buy time until the Bankruptcy Appellate Panel could hear his appeal of the relief from stay.

Mr. Morgan also testified at the § 341 meeting that he did not obtain permission from the court or any of the secured lenders before transferring the properties and purportedly transferring the debt on those properties to MPII. He stated that he thought he no longer needed such authorization after the plan was confirmed. The language to which Mr. Morgan refers in the first amended plan states that the debtor shall retain all of the estate's property unless and except as otherwise provided in the plan, and will continue to operate its business interests and real estate investments so as to devote all of its net disposable income to carrying out the terms of the plan. Fil. No. 179, Article VII at 29. The debtors had originally proposed to sell some of the properties to tenants, but First State Bank rejected that proposition, so the debtors removed it from the plan. Fil. No. 179 at 12-13. In the parties' stipulation settling some other objections and agreeing to confirmation, the bank agreed to let the debtor sell the homes to tenants and the following provision was included:

> Midland may sell any of the properties to the respective tenants pursuant to
> the terms of purchase options in the respective leases, provided that FSB consents to
> such sale, in writing, upon approval of the closing statement. Such consent shall not
> be unreasonably withheld. Closing on the sale of property to a tenant shall operate as
> a full release and satisfaction of any and all indebtedness owed by the Debtors, or
> either of them, jointly and severally, to FSB for the subject properties sold. Each
> property not sold to the tenant shall be subject to terms of sub-Class (a) above.

Stip. Order Confirming Plan, Ex. A at 3 (Fil. No. 371).

This language is the only language in the plan referring to the sale of properties in which First State Bank has an interest, and it clearly refers only to sales to the tenants of those properties. Moreover, any such sales were to occur only with written consent from First State Bank and the loan documents clearly have due on sale clauses. Yet – astonishingly – the debtors and their attorney interpreted this language to limit only sales to tenants, with any other sales of the property being

permitted unilaterally. *See* Br. in Supp. of Resistance to Mot. for Sanctions, at 12-13 (Fil. No. 54). It is unclear why the debtors, or their attorney, believed the bank wanted to be involved in any sales to tenants but nevertheless would be okay with the idea of the debtors transferring property to unknown transferees on unknown terms. Frankly, the debtors' interpretation of these plan terms is unbelievable and unconvincing.

The actions leading to the transfer of First State Bank's collateral to MPII, and MPII's subsequent bankruptcy filing, clearly were done in bad faith, as I have previously found. Counsel seems to believe that the creation of the entity early in 2016 is sufficient to say it was not formed on the eve of foreclosure. Frankly, that timing shows it was part of an intentional plan to hinder or delay the creditor. It is also unclear how a perfunctory assumption by a newly formed entity with no means of income (other than the properties transferred to it) constitutes valid consideration under any sense of the word. MPII's actions were unwarranted and are sanctionable. Rule 9011 by its terms applies only to attorneys and unrepresented parties. "Federal courts possess certain inherent powers, including the 'power to punish for contempts'[.] . . . Unlike the sanctioning authority conferred by Rule 9011, the inherent authority of a court to police itself includes the authority to sanction the bad-faith conduct of individuals other than attorneys, law firms, and parties." *Isaacson v. Manty*, 721 F.3d 533, 538-39 (8th Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 40 n.5, 44, and 50-51 (1991)).

Mr. Morgan caused MPII to be formed and the deeds and mortgages to be transferred to it. He purportedly did this with the help of an attorney other than and not affiliated with his bankruptcy counsel. Those actions led to the filing of this bankruptcy case and caused First State Bank to unnecessarily incur fees and costs to protect its secured property and get this case dismissed. Mr. Morgan and MPII are responsible for those fees and costs and should reimburse First State Bank. By July 15, 2016, First State Bank's attorney shall file an affidavit setting forth the reasonable and necessary legal fees and expenses incurred on behalf of First State Bank in this MPII bankruptcy case. A separate order will then be issued awarding sanctions.[5]

B.  Against Counsel for the Debtor.

The standard for determining whether an attorney has violated Rule 9011 "is whether the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Nett v. Manty*, 472 B.R. at 805 (quoting *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1009 (8th Cir. 2006)).

"[T]o impose a Rule 9011 sanction the court must find that an attorney 'submitted a claim that has no chance of success under existing precedents and that fails to advance a reasonable argument to extend, modify, or reverse the law as it stands.'" *Am. Residential Mortg., LP v. Thayer (In re Thayer)*, 384 B.R. 546, 552-53 (B.A.P. 8th Cir. 2008) (quoting *Halverson v. Funaro (In re Frank Funaro, Inc.)*, 263 B.R. 892, 900 (B.A.P. 8th Cir. 2001)). "Sanctions for litigation abuse are intended

---

[5]Accordingly, this order is not yet final for purposes of appeal.

as a balance between responsible conduct by the litigants and 'creative and ardent representation." *Id.* at 553 (quoting *Halverson*, 236 B.R. at 901 (quoting J. Scott Humphrey, *Sanctions Against the Creditor's Attorney in Non-reorganization Bankruptcy Proceedings*, 6 Bankr. Dev. J. 481, 482 (1989)).

"A court may conclude that an attorney who should have known a reorganization was futile before filing the petition has rendered no service to the estate and should therefore not be compensated for such service." *Grunewaldt v. Mut. Life Ins. Co. of New York (In re Coones Ranch, Inc.)*, 7 F.3d 740, 744 (8th Cir. 1993).

Counsel for the debtor states in his affidavit that he consulted with three experienced and knowledgeable bankruptcy attorneys from different practice areas about whether he should continue to represent MPII in its bankruptcy case. According to him, these other practitioners acknowledged he faced an uphill battle but was within ethical bounds to have filed and prosecuted the case. He asserts that he reasonably believed the transfer of the assets and the filing of the new bankruptcy case was a creative solution to the difficulties encountered in the original bankruptcy case.

As has been described in the preceding section, the actions of Mr. Morgan, Midland Properties, and MPII contravened the terms of the confirmed plan, disregarded the authority of this court, and were done in bad faith. The asserted justifications for the debtors' actions (entity created months before sale, so-called assumption, etc.) are simply not compelling. All of those earlier findings also apply to this discussion about whether sanctions against counsel are warranted. The bank also raised for the first time in its reply brief the argument that counsel for the debtors violated the Nebraska Rules of Professional Conduct, to which counsel understandably took great exception. Because Rule 9011 appears to adequately deal with the conduct complained of, the allegations under the professional conduct rules will not be addressed here.

Rule 9011(c)(2) describes the sorts of sanctions contemplated for violating the rule:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, and order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Counsel for the debtor is a distinguished and well-regarded bankruptcy attorney. His vast experience and esteemed participation in the local and national bankruptcy communities deserves some deference. His willingness to encourage and enable Mr. Morgan's gamesmanship with the creditors of Midland Properties – in particular First State Bank – however, is befuddling. Zealous representation of a client certainly is one of the duties of a lawyer. Nevertheless, a lawyer's ethical responsibilities also include the duty to say "no" to a client's frivolous efforts to skirt the law, harass

creditors, and waste estate and judicial resources. While the court should not stifle a lawyer's legal creativity, neither should it countenance his or her recklessness or indifference to established legal standards.

Counsel here has stated he was aware through connections with the larger bankruptcy community of unidentified problems in Chapter 11 cases in other jurisdictions caused by mortgage lenders' non-compliance with the terms of confirmed plans. He advised his client of various options for dealing with the pending implosion of the Midland Properties' plan, noting that the option of forming a new entity and filing another bankruptcy case was risky but likely viable and should be considered only after exhausting the other options. Unfortunately for all concerned, this option was the one the client preferred. Mr. Morgan worked with another attorney to form MPII and make the transfers and arrangements for collecting rents, and came back to his bankruptcy attorney on March 8, 2016, to discuss filing a Chapter 11 case for MPII.

At that point, counsel has explained, he did his due diligence in verifying the existence of MPII and the recordation of the quit-claim deeds and loan assumption agreements. He also reviewed Midland Properties' confirmed plan, confirmation order, and First State Bank's loan documents, and conducted legal research on serial filings and bad faith filings. After satisfying himself that a second bankruptcy case was appropriate under the circumstances, he filed MPII's Chapter 11 petition on April 4, 2016, and set in motion the events leading to the cancellation of the bank's trustee sales, the motion to dismiss the bankruptcy case, and the present motions for sanctions and disgorgement.

I simply cannot accept counsel's explanation that the asserted post-confirmation issues (which I will classify generally as communication problems) with other unidentified creditors justified transferring the properties to a newly formed entity for the express purpose of filing a new Chapter 11 case. Logically, a new case with a new debtor does not solve the identified problems; and, in fact, such a tactic would likely exacerbate the problems. The communication problems could have – and should have – been handled easily and efficiently with a simple motion in the Midland Properties case, particularly since it had a confirmed plan that could be enforced. The attempt to morph the communication problems into justification for the property transfers and new bankruptcy filing is not credible. It is clear to me that the transfers and filing were done solely to harass and impede First State Bank's foreclosure efforts after Midland Properties and Mr. Morgan failed to perform under their confirmed plan and First State Bank obtained an order granting relief from the automatic stay.

Under the circumstances present here – with a long-suffering creditor whom Mr. Morgan has admitted to antagonizing, the failure of the debtors to pay in the prior case, the new debtor's inability to make plan payments, an obvious absence of terms either in the plan documents or the loan documents which would permit such a strategy, loan documents that prohibit such a strategy, and a legal requirement as well as a jurisdictional custom of bringing plan disputes back to the court for resolution – counsel's conduct, viewed objectively, manifests reckless disregard of his duties to this court. Therefore, sanctions against the debtor's counsel are appropriate under Rule 9011 as well as this court's inherent authority. The disgorgement of fees is an appropriate sanction, as discussed below.

III.  Motion for Disgorgement

First State Bank requests the disgorgement of all attorneys' fees paid to counsel for the debtor in this case, suggesting that amount to be in excess of $17,000.00. The evidence indicates that in fact the debtor's attorney has been paid $225.00 for pre-petition services. The court's filing fee of $1,717.00 was paid from the $17,000.00 retainer, and the balance remains in counsel's trust account. Counsel is owed $12,900.00 for pre- and post-petition services through May 2, 2016.

Disgorgement of fees that have been paid is a serious sanction. When it is used, it generally is done so as a sanction for egregious conduct. *See, e.g.*, *In re Miller Auto. Group, Inc.*, 521 B.R. 323 (Bankr. W.D. Mo. 2014) (finding disgorgement warranted by counsel's violation of the Bankruptcy Code and Rules as well as "basic tenets of legal representation," by, *inter alia*, engaging in forum shopping, failing to perform a reasonable investigation into the facts of the petition, failing to disclose a conflict of interest, and bullying the debtor), *aff'd*, *Needler v. Casamatta (In re Miller Auto. Group, Inc.)*, 536 B.R. 828 (B.A.P. 8th Cir. 2015); *In re Burnett*, 450 B.R. 116 (Bankr. E.D. Ark. 2011) (finding disgorgement warranted by counsel's deficient representation in failing to provide clients with legal advice, letting a non-lawyer handle the case, actively concealing his errors, and ultimately causing harm to his clients); *In re West*, 398 B.R. 629 (Bankr. E.D. Ark. 2009) (finding disgorgement warranted because counsel failed to adequately represent the debtor, failed to communicate with the debtor, and billed the debtor for services not rendered); and *In re Redding*, 251 B.R. 547 (Bankr. W.D. Mo. 2000) (finding disgorgement warranted by counsel's failure to disclose and obtain approval of pre-petition fees received), *aff'd*, *Schroeder v. Rouse (In re Redding)*, 365 B.R. 601 (B.A.P. 8th Cir. 2001).

In addition to the grave examples of unethical conduct cited above, the courts in the Eighth Circuit also recognize a phenomenon known as "new debtor syndrome" as a violation of Rule 9011 sanctionable by the disgorgement of fees. The seminal case is *Grunewaldt v. Mut. Life Ins. Co. of New York (In re Coones Ranch, Inc.)*, 7 F.3d 740 (8th Cir. 1993). In that case, counsel for the debtor was sanctioned for filing a bankruptcy case, on the date of a scheduled foreclosure sale, for a newly created corporation formed by an individual who was unable to save his assets in a prior bankruptcy case. Counsel admittedly was brought into the case at the last minute, but she knew the corporation had no employees, no bank account, assets owned by the individual rather than the corporation, and no evidence of having conducted any business. Moreover, she specifically advised the individual to transfer only encumbered property to the corporation so that he could later offer any other property he had as an infusion of new capital. The bankruptcy court dismissed the bankruptcy case on grounds of bad faith, and it ordered counsel to return any fees she had received in connection with the case because she filed the petition without a basis from which to conclude the debtor had a reasonable prospect of successfully reorganizing. In addition, the bankruptcy court found that the bankruptcy petition was not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, as required by Rule 9011. The court ruled that counsel's legal research and analysis were cursory, resulting in an unreasonable decision to file the bankruptcy petition:

> While this Court may give some deference to Grunewaldt's testimony at the sanctions hearing that the "new debtor syndrome" cases were distinguishable from Debtor's

circumstances, it was not reasonable for her to conclude under the totality of the circumstances that this Court, the District Court for the District of South Dakota, and the Court of Appeals for the Eighth Circuit would find merit in Debtor's petition. After a reasonable inquiry into these courts' decisions and opinions, counsel should have concluded there was no merit to Coones' second bankruptcy effort in South Dakota.

*In re Coones Ranch, Inc.*, No. 91-40183-PKE, 1992 WL 111110, at *8 (Bankr. D.S.D. Mar. 9, 1992), *aff'd*, 7 F.3d 740 (8th Cir. 1993).

Moreover, counsel filed the petition for the improper purpose of causing a delay to the creditors who had scheduled a foreclosure sale.

> Clearly, staving off a foreclosure sale alone is not tantamount to a bad faith filing, but that fact in this case, coupled with the facts that (1) this was a successive filing by Coones, (2) in a dubious venue, (3) through a newly created corporation, (4) with no demonstrable evidence of an ability to reorganize, destroys any illusion that this petition was filed with the intent or reasonable prospect of a successful reorganization. Grunewaldt was fully aware of these circumstances when the petition was filed. Coones' frustration with the legal system and Grunewaldt's sympathy for Coones' predicament do not change the true nature and predisposed failure of Debtor's petition.

*Id.* (internal citations omitted).

The court ordered disgorgement of compensation on the basis that because "her services rendered no benefit to the estate, no fees were earned." *Id.* at 10.

In contrast to *Coones Ranch*, MPII did have assets and purportedly had liabilities. It did not have a bank account, or any assets other than the various properties transferred without permission of the secured lenders. The entity was formed and the transfers made while the bank was proceeding with its foreclosure notice and publication requirements. Counsel for the debtor became aware of these underlying facts, and Mr. Morgan's desire to put MPII into bankruptcy, in early March, a month before the bankruptcy petition was filed. He had time to, and did, research and analyze the consequences of the options available to him. He made a judgment call which, under the circumstances and the existing law in the Eighth Circuit, demonstrated poor judgment. While counsel may argue that MPII is distinguishable from *Coones Ranch* because care was taken to avoid some of the bad-faith issues evidenced in *Coones Ranch*, giving him a basis for a good-faith argument for the extension or modification of existing law, that position ignores the reality of the terms of the confirmed plan and the lenders' notes and deeds of trust. Counsel never explains why he thought the new filing had a chance for success. In light of the complete lack of a reasonable basis for believing the transfers of the properties and their associated debt would be okay with the bank, as well as the absence of any realistic prospect of a successful reorganization of MPII, counsel's actions provided no real benefit to the estate while causing delay and additional costs to First State Bank.

Disgorgement of fees in the amount of the $17,000.00 retainer received by counsel and denial of all fees to counsel for this case is warranted.

IV. Conclusion

The transfer of the properties from Midland Properties and Mr. Morgan to MPII was not done in good faith and, in fact, was in bad faith. The commencement of the MPII bankruptcy case was also in bad faith and without a reasonable basis in fact or law. Therefore, sanctions are appropriate.

IT IS ORDERED THAT:

1. First State Bank's motion for sanctions (Fil. No. 24) and motion for disgorgement of fees (Fil. No. 26) are granted.

2. Mr. Morgan and MPII shall reimburse First State Bank for all attorney fees it has incurred in connection with this bankruptcy filing of MPII. Mr. Knickrehm shall file evidence of such fees in affidavit form by July 15, 2016. A separate order or judgment shall be entered thereafter.

3. Mr. Hicks shall disgorge all attorney fees he received in connection with this bankruptcy case, including any unearned fees still held in trust. The evidence indicates that amount is $17,000.00, which shall be paid from Mr. Hicks or his firm to Mr. Knickrehm's firm to be held in trust pending further order of this court. Mr. Hicks and Mr. Knickrehm shall file evidence of such payment by July 15, 2016.

4. This order shall not be final until this court issues a further order or judgment after the filings referenced in paragraphs 1 and 2 above.

DATED: June 29, 2016.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    David G. Hicks
    *Craig A. Knickrehm
    Andrew R. Biehl
    Edward Brink
    Jeffrey Silver
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.